Missouri Pacific Railroad Company, Guy A. Thompson, Trustee *v.* Burks.

4-5134—4-5353 (consolidated)      121 S. W. 2d 65

Opinion delivered November 7, 1938.

*R. E. Wiley* and *Richard M. Ryan,* for appellant.

*Thomas W. Roland* and *Gordon E. Young,* for appellee.

Griffin Smith, C. J. A jury found in favor of Thomas J. Burks and against appellants for $2,500 to compensate personal injuries, upon which judgment was rendered. While an appeal to this court was pending, appellants moved in the lower court to have the judgment set aside and a new trial granted on the ground of newly discovered evidence. The motion was denied, and from the judgment of denial there was an appeal to this court. The two cases have been consolidated.

The questions are: (1) Were erroneous instructions given in the case which resulted in judgment of $2,500, and (2) did the court abuse its discretion in refusing to set the judgment aside and rehear the case because of the newly discovered evidence?

Appellee, plaintiff below, was engaged with other negroes in loading brick into a freight car. They were using wheelbarrows and were employed by Malvern Brick & Tile Company. To facilitate loading and shipment of the brick, appellant Railroad Company utilized a "spur," or sidetrack, on which cars were "spotted" at convenient places opposite the shipper's private loading platform.

It is alleged that in May, 1937, the floor of one of the freight cars so supplied by appellants was in a faulty or weakened condition; that a hole about three feet long and eighteen inches wide in such floor was covered with a piece of tin in such manner that the defect could not be observed by the exercise of ordinary care; that the tin was not strong enough to support a heavy load, and when appellee, with his wheelbarrow loaded with brick ran over it in the usual course of his employment, the tin "broke through" and appellee suffered an inguinal hernia.

Appellee testified that Franklin Henry, the Brick and Tile Company foreman, told him, before work was started, to go into the car and look it over. He saw the tin at that time, and also saw two uncovered holes. The foreman, appellee says, directed that boards be put over the open holes. Henry testified that when he found the two holes and noticed the piece of tin, he instructed appellee and another employee to put boards over them; that he told appellee to be careful about the tin. Appellee had been working for the Brick and Tile Company about a year. The two holes in the floor and the hole covered by the tin were in the same end of the car. The tin was "sunk down" enough to show that there was a hole "or something" under it. Appellee helped sweep the car the morning of the injury. Henry further testified that he told the boys not to run a wheelbarrow over the tin.

Tom West, employee of the Brick and Tile Company, testified that he heard Henry give the instructions as to care. Appellee denied that he was warned of the tin. Previous to the accident, appellee had seen cars with tin on the floor and had taken the tin off, as he "needed it for his chicken house at home." No one from the Railroad Company directed appellee in loading the brick.

The jury returned a verdict for $800 against the Brick and Tile Company. Motion for a new trial was duly filed, in which 29 alleged errors were assigned.

August 23, 1937, the trial court found "That the motion for a new trial filed by [the defendant] should be granted, and that the judgment rendered . . . July 22, 1937, . . . should be vacated. It is therefore ordered and adjudged by this court that the motion for a new trial . . . be, and the same is hereby sustained; and the said judgment rendered in favor of plaintiff . . . be, and the same is, hereby ordered vacated and set aside. It is further ordered that the motion of plaintiff to dismiss this cause . . . be, and the same is, hereby granted, and this cause is hereby dismissed."

It is alleged by appellants that an understanding had been reached between appellee and his attorney and the attorney for Malvern Brick & Tile Company, whereby $600 would be paid in settlement of the judgment for $800; and that dismissal of the cause was, in reality, an incident to settlement and satisfaction of the judgment.

Thereafter, suit was filed against the Railroad Company, and on substantially the same evidence as that adduced in the case of *Burks* v. *Malvern Brick & Tile Company*, the jury returned a verdict in appellee's favor for $2,500.

With their petition for a new trial appellants offer:

(1) Affidavit of Frank Ault, Malvern chief of police, that appellee stated he had received money from the insurance company in settlement of the judgment against Malvern Brick & Tile Company. That in March, 1938, he (Ault) imparted this information to Richard M. Ryan, attorney for appellants; that Burks told affiant he settled the case with the insurance company for $400;

that he paid his lawyer $200 and his doctor $70, and put $50 on the place he is now living on, and that he intended to pay an old fine to the city of Malvern when his judgment against the Railroad Company was settled.

(2) Affidavit of Richard M. Ryan that at trial of the suit against the Railroad Company he, as attorney, asked appellee the question: "You did not think that you got enough money when the jury gave you $600, did you, in the trial last July?" To which appellee replied: "No, sir, that is not right. I did not get any."

Affiant would further testify that at the time of the trial, and for some time thereafter, he did not know settlement had been made "by the Malvern Brick & Tile Company and the insurance company with said Thomas J. Burks on August 23, 1937, the day the case was dismissed."

In the concluding paragraph of the petition it is alleged that the defendants did not, prior to the trial, know of the facts set out, and that they could not, by the exercise of reasonable diligence, have ascertained them.

The petition also sets out that another witness, whose evidence will be available if a new trial is granted, interviewed appellee, and appellee stated that after he recovered judgment against the Brick Company he was advised by his attorney that it would be best to let such judgment be set aside, to which he consented, and was paid "the certain sum of money in settlement of his claim against the Brick and Tile Company."

Appellee contends that the so-called new evidence is not, in fact, new; that it was known to appellants' attorney prior to the trial; that one of the attorneys who represented appellee in his suit against the Railroad Company told Ryan that Burks had been paid $600 "in consideration of a covenant not to sue the Brick Company." It is also insisted that when, at the trial, Ryan stated to the witness (appellee), or asked the question, "You did not think you got quite enough money when the jury gave you $600, did you, in the trial last July?" that the witness answered: "No, sir, that is not right. I did not get any—"

The difference between the quotation by Ryan in his petition, and the same answer as copied by appellee, is that Ryan places a period after the word "any," while appellee shows a dash, indicating that the sentence was not finished.

If the settlement effectuated between appellee and Malvern Brick & Tile Company was a mere covenant not to sue, it would not be a bar to the instant action against appellants. If, on the other hand, it was a settlement of the judgment against the Brick and Tile Company, and such Company and appellants were joint tortfeasors, settlement of the Brick and Tile Company judgment would be a bar to any proceeding against appellants growing out of the same transaction, for there can be but one satisfaction.

Appellee says: "In the discussions between the attorneys [for appellee] prior to the court's vacating the judgment, they entered into a tentative agreement only in the event that the judgment was set aside by the court and a new trial granted the Brick Company. They did not agree for the judgment to be set aside, but this was a matter wholly within the discretion of the trial court, and when he did set it aside they had a perfect right to enter into this covenant not to sue."

The record is at variance with this declaration. First, the court found that the motion for a new trial should be granted. Then, in the same order, it found that "the motion of *plaintiff* to dismiss this cause" should be granted.

Instruction No. 1, given at plaintiff's request, was: "If you find from a preponderance of the evidence in this case that the plaintiff . . . was injured while in the exercise of due care for his own safety, and you further find from a preponderance of the evidence that his injury was caused by the negligence of the defendants, as alleged in plaintiff's complaint, then you are told that plaintiff would be entitled to a judgment against the defendant."

This instruction was specifically objected to . . . "for the reason that [it] ignores the negligence of the plaintiff in running his wheelbarrow into the piece of

tin." There was also a general objection. While the specific objection was directed to the question of contributory negligence, and such negligence is covered by that part of the instruction which refers to "due care [of the plaintiff] for his own safety," the element of assumed risk is entirely ignored; yet notwithstanding such omission, the instruction concludes with the statement that, if conditions mentioned in the instruction concur, the plaintiff would be entitled to a judgment. There was testimony by the witness Henry that appellee had been warned of the tin, and that "the boys" had been told not to run wheelbarrows over it.

In *Vaughn* v. *Herring*, 195 Ark. 639, 113 S. W. 2d 512, we said: "This court said in the case of *Temple Cotton Oil Co.* v. *Skinner*, 176 Ark. 17, 2 S. W. 2d 676: 'The result of our view is that it is established as settled law of this state by the decision in *Garrison Co.* v. *Lawson*, 171 Ark. 1122, 287 S. W. 396, and *Natural Gas & Fuel Co.* v. *Lyles*, 174 Ark. 146, 294 S. W. 395, that an instruction is inherently erroneous, and therefore prejudicial, which leaves out of consideration the plaintiff's contributory negligence or his assumption of risk, and leaves to the jury the determination of the defendant's conduct, as the sole issue of the jury's verdict, by concluding with the phrase, "you will find for the plaintiff," since under the evidence the conduct of the plaintiff, as well as that of the defendant, is essential to a proper verdict.' "

Instruction No. 4 told the jury that it was the duty of the Railroad Company to use ordinary care to supply shippers with cars in such state of repair that they can be loaded by the shipper, servants, etc., with reasonable safety; that if the Railroad Company knows the use to which such car is to be put it should furnish such car in reasonably safe condition; that if the jury should find that the Malvern Brick & Tile Company ordered a freight car for use in loading and shipping brick and the Railroad Company knew of the use to which the car was to be put and the manner in which it would be loaded, "and you further find that the floor of said freight car was

in an unsafe or defective condition for the loading of brick . . . and that said defective or unsafe condition of said car, if you find that there was a defective or unsafe condition, was known, or by the exercise of ordinary care should have been known, by the defendants, . . . then you are told that the defendant was negligent under these circumstances.''

Effect of this instruction was to tell the jury that if the floor of the freight car was in an unsafe or defective condition for loading bricks, there was negligence upon the part of appellants.

Whether conduct, in a given case, amounts to negligence, is ordinarily a question for the jury. In the controversy at bar, knowledge by appellants that there were holes in the floor of the car, or the act of appellants with or without knowledge that it was in an unsafe condition —if, in fact, it was unsafe—in furnishing such car, would be evidence of negligence. Even though the act of supplying a defective car constituted negligence, it would be for the jury to determine whether that negligence was neutralized by the injured party's actual knowledge that a defective condition existed. If the Brick and Tile Company's agent warned appellee of the defects, or if appellee had independent knowledge and notwithstanding such knowledge assumed the risk, the Brick and Tile Company would not be liable. Certainly appellants would be relieved if the warning given by Henry, or if the information acquired by appellee, was sufficient to excuse the Brick and Tile Company. The error is that the instruction invades the province of the jury.

■ We are also of the opinion that the trial court abused its discretion when it overruled appellants' motion for a new trial, based upon newly discovered evidence. Appellee's activities directed to the proposition of having judgment against the Brick and Tile Company set aside is ''tied in'' with the court's order dismissing the cause. The motion to set the judgment aside, and the motion to dismiss the cause, seem to have been considered concurrently.

If payment of $600 to appellee settled the $800 judgment, then the agreement in question was not a covenant against suit. An issue of fact is presented, and such issue should be submitted to a jury, under proper instructions, or heard by the court under agreement of the parties.

For the errors mentioned the judgment is reversed and the causes are remanded with directions that a new trial be granted.